IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| IN RE: | * | |
| | * | CHAPTER 11 |
| GRAHAM GULF, INC., | * | |
| | * | CASE NO. 15-03065 |
| Debtor. | * | |

**DEBTOR'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTOR TO (A) PAY CERTAIN EMPLOYEE COMPENSATION AND BENEFITS AND (B) MAINTAIN AND CONTINUE SUCH BENEFITS AND OTHER EMPLOYEE-RELATED PROGRAMS AND (II) AUTHORIZING FINANCIAL INSTITUTIONS TO HONOR AND PROCESS ALL RELATED CHECKS AND TRANSFERS**

COMES NOW Graham Gulf, Inc., debtor in possession (the "**Debtor**"), and respectfully requests entry of interim and final orders authorizing the payment of Prepetition Employment Obligations (as defined below); and (ii) granting related relief. In support of this Motion, the Debtor relies on and incorporates by reference *Keith Hayles's Declaration in Support of the Debtor's Chapter 11 Petition and First Day Pleadings* (the "**First Day Declaration**"), filed concurrently with this Motion.[1] In further support of the Motion, the Debtor, by and through its undersigned counsel, respectfully represents:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and 1334 and venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b).

**BACKGROUND**

2. On September 18, 2015 (the "**Petition Date**"), the Debtor filed a voluntary petition with this Court for relief under chapter 11 of the Bankruptcy Code. The Debtor

---

[1] Capitalized terms not otherwise defined in the Motion have the meanings used in the First Day Declaration.

continues to manage and operate its business as debtor in possession under Bankruptcy Code §§ 1107 and 1108.

3. The Debtor is a privately held maritime company supporting the Oil, Gas and Shipping Industries. It operates a fleet of eleven (11) Fast Supply Vessels designed specifically for providing a more efficient and cost-effective support for field production operations and remote drilling location services. Founded in 1996, the company has expanded rapidly. Using its own unique vessel designs, the Debtor has introduced the most advanced technologies available in vessel management and operations. The company's fleet of service vessels with a cabin-forward bow, dramatically increases their internal and external cargo capacity. In addition, the vessels' masters have a 360 degree view of their surroundings and deck area eliminating blind-spots commonly found in other designs. This unique feature allows for safer operations in today's often crowded waterways and working in close proximity to off-shore structures.

4. Additional information on the Debtor's business and capital structure, as well as a description of the reasons for filing this case and the Debtor's goal for this case, are set forth in the First Day Declaration.

**RELIEF REQUESTED**

5. By this Motion, the Debtor requests entry of interim and final orders - as proposed in Exhibit A (the "**Interim Order**") and Exhibit B (the "**Final Order**") respectively - authorizing the Debtor, in the exercise of its business judgment, as deemed necessary to continue to operate and preserve value, to (a) pay all prepetition wages, salaries, commissions, other compensation, and related administration and other incidental costs (all as described below and collectively, the "**Employee Compensation Obligations**") and prepetition employee benefits (all as described below and collectively, the "**Employee Benefit**

Obligations"), (b) withhold all federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations as required by applicable law, (c) pay all employment, unemployment, Social Security, and similar federal, state, and local taxes relating to the Employee Compensation Obligations and Employee Benefit Obligations, whether withheld from wages or paid directly by the Debtor to governmental authorities (collectively, "**Payroll Taxes**"), and make other payroll deductions, including, but not limited to, retirement and other employee benefit plan contributions, garnishments, and voluntary deductions (all as described below and collectively with the Payroll Taxes, the "**Payroll Deduction Obligations**," and collectively with the Employee Compensation Obligations and Employee Benefit Obligations, the "**Prepetition Employee Obligations**"), and (d) honor and continue their prepetition programs, policies, and practices as described in this Motion with respect to the Prepetition Employee Obligations in the ordinary course of business. The Debtor also seeks entry of interim and final orders authorizing all financial institutions to receive, honor, process, and pay any and all checks and wire transfers drawn on the Debtor's accounts[2] in satisfaction of the Prepetition Employee Obligations. The relief requested should be granted under Bankruptcy Code §§ 105(a), 363(b), 507(a), 541, 1107(a), and 1108, Federal Rules of Bankruptcy Procedure 6003 and 6004.

6. As of the Petition Date, the Debtor estimates that the Prepetition Employee Obligations total approximately $475,000 all of which will become due and owing during the 21 days following the Petition Date (the "**Interim Amount**"). To fulfill these commitments, the Debtor requests entry of an interim order, authorizing the Debtor to pay Prepetition Employee Obligations in an aggregate amount not to exceed the Interim Amount, followed

---

[2] Contemporaneous with this Motion, the Debtor has filed a motion for authority to continue using its cash management system.

by entry of a final order authorizing the Debtor to pay all other Prepetition Employee Obligations.

7. Further, the Debtor requests that this Court authorize all applicable banks and other financial institutions to receive, process, honor, and pay all checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts prior to the Petition Date for Prepetition Employee Obligations (or to reissue checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts, as may be necessary), and authorize the banks and financial institutions to rely on the Debtor's representations as to which checks, drafts, electronic fund transfers, or other forms of payment drawn or issued on the Debtor's bank accounts are subject to this Motion, provided that sufficient funds are on deposit in the applicable bank accounts to cover such payments.

## BASIS FOR RELIEF REQUESTED

I. **FACTS SPECIFIC TO RELIEF REQUESTED**

A. **The Debtor's Employees**

8. As of the Petition Date, the Debtor employs 125 people. Of these employees, some are salaried (the "**Salaried Employees**"), but most are paid on a daily basis (the "**Daily Employees**," together with the Salaried Employees the "**Employees**").[3]

9. To remain competitive in their industry, it is essential the Debtor maintains a highly skilled workforce. Most of the Daily Employees have special skills developed through intensive training and years of experience. As a result, the Debtor's competitors often seek to recruit Daily Employees, typically by offering more attractive compensation packages. To

---

[3] The number of Daily Employees fluctuates because some, including vessel crew, work only when assigned to a particular job. When not on a job, these Daily Employees are not paid wages.

prevent constant – and harmful – turnover, the Debtor must offer competitive wages and benefits to their Employees.

**B.     Wages, Salaries, and Related Obligations**

   **1.     Wage and Salary Obligations**

Before the Petition Date and in the ordinary course of its business, the Debtor typically paid Employee Compensation Obligations to its Daily Employees biweekly, and to its Salaried Employees semimonthly, with payments to Salaried Employees occurring on the 15th and the last days of a given month.

   **2.     Payroll Taxes**

The Debtor withholds funds from Employees' wages and salaries and also makes certain Payroll Tax payments from its own funds. All Payroll Taxes have been remitted to the appropriate governmental authorities.

   **3.     Garnishments**

In the ordinary course of processing payroll checks for Employees, the Debtor may be required by law, in certain circumstances, to withhold from certain Employees' wages amounts for various garnishments, such as tax levies, child support, and other court-ordered obligations (collectively, the "**Garnishments**"). When required, the Debtor withholds Garnishments from certain Employees' paychecks, and remits the same to the appropriate governmental authorities on a monthly basis. As of the Petition Date, all Garnishments have been remitted to the appropriate governmental authorities.

   **4.     Leave Policies**

The Debtor offers certain eligible Employees other forms of compensation, including vacation and personal days, holidays, civic duties leave, and bereavement days.

5

These forms of compensation are usual, customary, and necessary if the Debtor is to retain qualified Employees to operate their businesses. Failure to provide these benefits could harm Employee morale and encourage the premature departure of Employees. The Debtor therefore requests authority to continue these programs in the ordinary course of business during this chapter 11 case.

**C.     Health and Welfare Benefits**

The Debtor offers its eligible Employees various standard employee benefits, which include medical coverage, pharmaceutical benefits, dental insurance, vision coverage, COBRA coverage, workers' compensation coverage, and other benefit programs provided to Employees in the ordinary course of business (collectively, the "**Health and Welfare Benefits**"). Employees must work 30 hours or more per week to be eligible for Health and Welfare Benefits.

**1.     Medical Plans**

10.     The Debtor offers medical benefits to eligible Employees and eligible members of Employees' families (collectively, the "**Plan Participants**") through insurance administered by a third-party administrator, Blue Cross Blue Shield of Alabama ("**BCBS**"). As of the Petition Date, BCBS has not presented the Debtor any prepetition accrued claims under the Medical Plans; however, due to the nature of the medical plan, it remains possible that certain services may have been provided prepetition for which claims have not yet been presented to the Debtor. The Debtor has no way to properly estimate the amount in prepetition medical claims will come due during the first 21 days of the case.

6

### 2. Dental Plan

11. The Debtor offers eligible Employees a dental plan (the "**Dental Plan**") administered by BCBS. The cost of the Dental Plan is borne primarily by the Debtor, but Employees also contribute to the Dental Plan through payroll deductions. As of the Petition Date, the Debtor is current on all of its Dental Plan obligations.

### 3. Vision Plan

12. The Debtor offers vision coverage to Employees through a fully insured vision care plan with Vision Service Plan (the "**Vision Plan**"). Vision Plan expenses are bourne by the Employees and are current.

### 4. COBRA Program

13. The Debtor also offers eligible Employees the option to retain COBRA medical, dental, vision coverage, and employee-assistance programs at their own expense, for 18 to 36 months after termination of employment.

### 5. Workers' Compensation Program

14. The Debtor maintains workers' compensation insurance for Employees at the statutorily required level in the states where the Debtor conducts business (the "**Workers' Compensation Program**"). All Employees who work in those states are entitled to participate in the Workers' Compensation Program. The Workers' Compensation Program is fully insured, so the Debtor does not incur any additional costs on account of claims brought under the Workers' Compensation Program. The Workers' Compensation Program is maintained through Continental American Insurance. The Debtor pays approximately $22,000 in monthly premiums for maintaining the Workers' Compensation Program. The Debtor does not owe any fees on account of the Workers' Compensation Program.

15. The Debtor must continue the claim assessment, determination, adjudication, and payment process under the Workers' Compensation Program without regard to whether such liabilities are outstanding before the Petition Date to ensure that the Debtor complies with applicable workers' compensation laws and requirements. The Debtor accordingly seeks authority to continue to maintain the Workers' Compensation Program in the ordinary course of business.

### 6. Other Benefit Programs

16. The Debtor also offers other customary benefits to their Employees, including: basic life insurance coverage and short-term disability insurance. The Debtor cannot estimate the amount of these customary benefits outstanding as of the Petition Date because the time for submission for required reports has not come due as of the Petition Date.

## II. LEGAL BASIS FOR RELIEF REQUESTED

### A. Payment of the Prepetition Employee Obligations Is Appropriate Under Bankruptcy Code §§ 363(b) and 105(a) and the Doctrine of Necessity

17. The Court has authority under Bankruptcy Code §§ 363(b) and 105(a) to approve the Debtor's payment of the Prepetition Employees. Under Bankruptcy Code § 363(b)(1), a debtor may, in the exercise of its sound business judgment and after notice and a hearing, "use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1); *see also Official Comm. of Unsecured Creditors of LTV Aerospace & Defense Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court may approve an application under section 363(b) upon a showing of a good business reason for the disposition). For a court to approve the use, sale, or lease of estate property under Bankruptcy Code § 363(b), the debtor must "articulate some business justification, other than mere appeasement of major creditors . . . ." *In re Ionosphere Clubs, Inc.*,

8

98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (holding that debtor's payment of prepetition claims was necessary to protect its business and to ensure successful reorganization).

18. Likewise, Bankruptcy Code § 105(a) empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." *Ionosphere Clubs*, 98 B.R at 175. Section 105 permits a court to authorize the "pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." *In re NYR L.P.*, 147 B.R. 126, 127 (Bankr.E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).

19. The relief requested in this Motion is an appropriate exercise of the Debtor's business judgment under Bankruptcy Code §§ 363(b) and 105(a). The continued compensation of the Employees—integral to a successful reorganization—is a necessary and justifiable business expense. If the relief requested in this Motion is not granted, the Debtor's business operations will suffer, to the detriment of the Debtor's estate, creditors, and other stakeholders.

20. The Debtor also submits that payment of the Prepetition Employee Obligations is necessary and appropriate and may be authorized under Bankruptcy Code §§ 363(b) and 105(a) under the "doctrine of necessity." In a chapter 11 case, the doctrine of necessity is a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of prepetition claims. *See In re Lehigh & New England Ry. Co.,* 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims when payment is essential to continued operation of debtor, such as where there is a "possibility that

9

the creditor will employ an immediate economic sanction, failing such payment"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102 n.1 (3d Cir. 1972) (holding that the doctrine of necessity "permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid"); *In re Just for Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) (noting that §105 and the doctrine of necessity provide courts with authority to permit payment of prepetition claims necessary to facilitate a successful reorganization); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (noting that debtors may pay prepetition claims essential to continued operation of business). The rationale for this doctrine is consistent with the paramount goal of chapter 11—"facilitating the continued operation and rehabilitation of the debtor." *In re Ionosphere Clubs, Inc.*, 98 B.R. at 176.

21. The relief requested in this Motion is necessary for the Debtor to maximize value for all stakeholders. Continued payment, without interruption, of the Prepetition Employee Obligations, and the continued funding, without interruption, of the compensation and benefits plans, policies, programs, and practices attendant to the Prepetition Employee Obligations as described in this Motion are vital to the Debtor's business and will ensure a smooth transition into chapter 11 and enhance the success of this case.

22. Any delay or failure to pay wages, salaries, benefits, and other similar items would irreparably impair the Employees' morale, dedication, confidence, and cooperation and would adversely impact the Debtor's relationship with its Employees at a time when the Employees' support is critical to the success of the Debtor's chapter 11 case. The Debtor simply cannot risk the substantial damage to its business that would result from any decline in employee morale.

10

Case 15-03065   Doc 12   Filed 09/18/15   Entered 09/18/15 16:46:44   Desc Main
Document     Page 10 of 17

23. Absent orders granting the relief requested in this Motion, the Employees could also suffer undue hardship and, in many instances, serious financial difficulties, as some Employees will likely need the amounts in question to meet their own personal financial obligations. Failure to reimburse business expenses will cause Employees to worry about personal liability for business-related charges, a concern that would discourage the Employees from devoting their full attention to the Debtor's business and restructuring efforts.

24. Without the requested relief, the stability of the Debtor's workforce will be undermined, perhaps irreparably, by the likelihood that the Debtor will lose valued employees. Accordingly, for all the above reasons, the Debtor submits that the requested relief is reasonable and necessary.

**B. The Debtor Should Be Authorized to Pay the Prepetition Employee Obligations Under Bankruptcy Code Sections 1107(a) and 1108**

25. Because they are operating their business as debtors in possession under Bankruptcy Code sections 1107(a) and 1108, the Debtor is a fiduciary "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) [their] equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). A chapter 11 debtor in possession is has the implicit duty "to protect and preserve the estate, including an operating business's going-concern value." *Id.*

26. At least one court has noted that a debtor in possession can in certain instances fulfill its fiduciary duty "only by the preplan satisfaction of a prepetition claim." *Id.* The *CoServ* court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-prong test for

11

determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

27. Payment of the Prepetition Employee Obligations here meets each element outlined in *CoServ*. First, the Debtor's Employees—an asset that is among the Debtor's most valuable—are central to the success of this chapter 11 case, and thus, it is critical that the Debtor deals with the Employees. Second, for the reasons already explained, if the Debtor does not pay the Prepetition Employee Obligations, the Debtor risks the "probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of" the Prepetition Employee Obligations. Finally, with respect to the Employees, the Debtor has examined other options short of payment of the Prepetition Employee Obligations and has determined that, to avoid significant disruption of the Debtor's business operations, there is no practical or legal alternative to paying such obligations. Therefore, the Debtor can meet its fiduciary duties as debtor in possession under Bankruptcy Code §§ 1107(a) and 1108 only by paying the Prepetition Employee Obligations.

### C. The Prepetition Employee Obligations Constitute Priority Claims Under Bankruptcy Code Section 507(a)

28. The Debtor believes that the majority of the Prepetition Employee Obligations constitute priority claims under Bankruptcy Code §§ 507(a)(4), (a)(5), and (a)(8), which must be satisfied prior to any general unsecured claims against the Debtor's estate. 11 U.S.C. §§ 507(a)(4), 507(a)(5), 507(a)(8), 726. Specifically, under Bankruptcy Code § 507(a)(4)(A), claims of employees for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date are afforded priority unsecured status up to $12,475 per individual. 11 U.S.C. § 507(a)(4)(A). As of the Petition Date, there are no Employees with accrued unpaid wages exceeding that $12,475 cap. Thus, virtually all the Prepetition Employee Obligations are priority claims that, in any event, will have to be paid in full. Given the amount at stake compared to the size of this case, the Debtor respectfully requests that it be authorized to pay all accrued but unpaid Prepetition Employ Obligations.

29. Similarly, Bankruptcy Code § 507(a)(5) provides that employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status up to $12,475 per employee covered by such plan, less any amount paid under § 507(a)(4). 11 U.S.C. § 507(a)(5)(A). Further, payment of the Payroll Taxes also will not prejudice other creditors of the Debtor, as the relevant taxing authorities generally would hold priority claims under Bankruptcy Code § 507(a)(8) for such obligations. *See* 11 U.S.C. § 507(a)(8).[4] Payment of the Prepetition Employee Obligations merely expedites the treatment afforded to such claims and is consistent with the priority scheme of the Bankruptcy Code.

---

[4] Bankruptcy Code §507(a)(8) affords priority to, among other things, unsecured claims of governmental units for (i) taxes required to be collected or withheld and for which the debtor is liable in whatever capacity (§ 507(a)(8)(C)) and (ii) under certain circumstances, employment taxes on wages, salaries, or commissions (§ 507(a)(8)(D)).

**D. Funds Related to the Payroll Taxes and Payroll Deduction Obligations May Be Held in Trust and Are Not Property of the Estate**

30. The portion of Payroll Taxes withheld from an Employee's wages and any other Payroll Deduction Obligations are collected or withheld by the Debtor and may be held in trust for the benefit of the applicable taxing authority. As a result, Payroll Taxes and other Payroll Deduction Obligations are not property of the Debtor's estate under Bankruptcy Code § 541 and, such funds therefor are not available for the satisfaction of creditors' claims. *See, e.g., Begier v. IRS*, 496 U.S. 53 (1990) (withholding taxes are property held by the debtor in trust for another and, as such, not property of the debtor's estate); *City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95 (3d Cir. 1994) (withheld taxes were subject to a trust); *see generally In re Columbia Gas Sys. Inc.*, 997 F.2d 1039, 1060 (3d Cir. 1993) (indicating that even if a statute does not establish an express trust, a constructive trust may be found). Instead, the Debtor may be obligated to remit these funds to the applicable taxing authority.

31. Many federal, state, and local statutes also impose personal liability on officers and directors of companies for certain Payroll Taxes and any other Payroll Deduction Obligations such entities owe. To the extent that the relevant Payroll Taxes and other Payroll Deduction Obligations remain unpaid by the Debtor, the Debtor's directors, officers, and executives may be subject to lawsuits or criminal prosecution during the pendency of this chapter 11 case. Any such lawsuit or criminal prosecution (and the ensuing potential liability) would distract the Debtors and their officers, directors, and executives from devoting their full attention to the Debtor's business and the orderly administration of the chapter 11 case. The Debtor believes that these distractions would materially and adversely affect its ability to operate in the ordinary course of business and to administer this chapter 11 case, with resulting detriment to any parties in interest.

14

32. In other chapter 11 cases throughout the country have approved payment of prepetition claims for compensation, benefits, and expense reimbursements similar to those described in this Motion. For these reasons, the Debtor submits that the relief requested is essential, appropriate, and in the best interests of its estate and creditors, and any parties in interest, and therefore, should be granted.

E. **Interim Relief Is Necessary to Avoid Immediate and Irreparable Harm**

33. Under Federal Rule of Bankruptcy Procedure 6003, the Court may grant a motion to "use property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days after the chapter 11 case's commencement to the extent "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. Here, the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and its estate, as set forth in the First Day Declaration, and relief on an interim basis is therefore appropriate under Federal Rule of Bankruptcy Procedure 6003, if applicable.[5]

34. The urgency of the relief requested justifies immediate relief. To ensure the relief requested is implemented immediately, the Debtor requests that the Court waive the notice requirements under Federal Rule of Bankruptcy Procedure 6004(a), if applicable, and the 14-day stay of an order authorizing the use, sale, or lease of property under Federal Rule of Bankruptcy Procedure 6004(h).

## RESERVATION OF RIGHTS

35. Nothing contained in this Motion is an admission of the validity of any claim against the Debtor, a waiver of the Debtor's or any other party's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code §365.

---

[5] See the First Day Declaration filed concurrently with this Motion.

15

If this Court grants the relief requested in this Motion, any Court-authorized payment is not an admission of the validity of any claim or a waiver of the Debtor's or any other party's rights to subsequently dispute such claim. In addition, authorization to pay the claims described in this Motion will not be deemed a direction to the Debtor to pay such claims.

## NOTICE

36. The Debtor will provide notice of this Motion by facsimile, e-mail, overnight delivery, or hand delivery to: (i) the Office of the United States Bankruptcy Administrator for the Southern District of Alabama; (ii) the holders of the 20 largest unsecured claims against the Debtor; and, (iii) counsel to Wells Fargo Bank. Following the hearing, a copy of this Motion and any order entered with respect to it will be served on the foregoing parties and all parties having filed requests for notice in this chapter 11 case.

37. Given that this Motion is seeking "first day" relief, the Debtor submits that no other or further notice is necessary.

## NO PRIOR MOTION

38. The Debtor has not made any prior motion for the relief sought in this Motion to this Court or any other.

39. The Debtor respectfully requests entry of interim and final orders granting the relief requested and any other relief as is just and proper.

Respectfully submitted this 18th day of September, 2015.

/s/ Jeffery J. Hartley
JEFFERY J. HARTLEY (HARTJ4885)
CHRISTOPHER T. CONTE (CONTC7094)
Proposed Attorneys for the Debtor and
Debtor in Possession, Graham Gulf, Inc.

16

**Of counsel:**
HELMSING, LEACH, HERLONG,
   NEWMAN & ROUSE, P.C.
Post Office Box 2767
Mobile, AL 36652
(251) 432-5521
(251) 432-0633 Fax
Email  jjh@helmsinglaw.com
      ctc@helmsinglaw.com