## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:

Graham Gulf, Inc.,

                           Debtor.

Chapter 11

Case No. 15-03065

## INTERIM ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN POSTPETITION FUNDING; (II) AUTHORIZING USE OF CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; AND (VI) SCHEDULING A FINAL HEARING

This matter came before the Court on the Debtor's *Motion (I) Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, and 507 Authorizing the Debtor to (A) Obtain Postpetition Financing, (B) Grant Senior Liens and Superpriority Administrative Expense Status, and (C) Utilize Cash Collateral of Pre-Petition Secured Parties; (II) Granting Adequate Protection to Pre-Petition Secured Parties Pursuant to 11 U.S.C. Section 361, 362, 363, and 364; (III) Scheduling a Final Hearing; and (V) Granting Related Relief* [Docket No. 14] (the "**DIP Motion**").

It appearing from the DIP Motion and the record before the Court that, among other things, interim use of cash collateral and additional interim funding is necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing on the DIP Motion (the "**Final Hearing**"), the Court held a preliminary hearing on the DIP Motion on September 22, 2015 (the "**Interim Hearing**").

The agent for the Debtor's senior secured lenders, Wells Fargo Bank, N.A. ("**Wells Fargo**"), appeared at the Interim Hearing and objected to the relief sought by the Debtor in the DIP Motion. No other parties in interest appeared at the Interim Hearing. Following the presentation of counsel for the parties, the Court released the parties to discuss possible resolution

of the objections raised by Wells Fargo.  When the Interim Hearing resumed the Debtor and Wells Fargo announced to the Court the proposed terms set forth below.

The Court has considered the DIP Motion, the interim relief sought therein, the presentations of counsel for the parties appearing at the Interim Hearing, the proposals of the Debtor and Wells Fargo at the Interim Hearing, and the entire record before the Court.  No objection to the relief granted hereinafter has been advanced at the Interim Hearing or elsewhere in the record.  It appears on the record before the Court that approval of the interim relief set forth herein is: (1) necessary to avoid immediate and irreparable harm to the Debtor's estate pending a Final Hearing, (2) fair and reasonable and in the best interests of the Debtor, its creditors, estate and equity holders, and (3) essential for the continued operation of the Debtor's business.  After due deliberation and consideration, and for good and sufficient cause appearing therefore, in accordance with Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"),

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

A.      <u>Jurisdiction and Venue</u>.  This Court has jurisdiction over these proceedings, and the persons and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue of the Debtor's above-captioned bankruptcy case (the "**Bankruptcy Case**") and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

B.      <u>Petition Filed</u>.  The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, *et. seq.* (the "**Bankruptcy Code**") on September 18, 2015 (the "**Petition Date**").  The Debtor continues in the operation of its business

and manages its property as a Debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the case. An official committee of unsecured creditors (the "**Committee**") has not been appointed in the case.

       D.    <u>Debtor's Stipulations</u>**.** The Debtor admits, stipulates, acknowledges and agrees (collectively, paragraphs D(i) through D(vii) hereof shall be referred to herein as the "**Debtor's Stipulations**"), as follows:

       (i)  <u>Pre-Petition Liens</u>**.** Prior to the Petition Date, Wells Fargo and the Pre-Petition Lenders (as defined below) made loans and advances and provided credit accommodations to the Debtor, C&G Boat Works, Inc. ("**C&G**"), and Graham Holding Company, Inc. ("**Parent**") pursuant to that certain: (a) Credit Agreement dated as of March 13, 2014, by and among the lenders party thereto (collectively, the "**Pre-Petition Lenders**"), Wells Fargo, in its capacity as administrative agent for Pre-Petition Lenders and Bank Product Providers (in such capacity, "**Pre-Petition Agent**"), the Debtor, C&G, and Parent (as amended, restated, supplemented, or otherwise modified from time to time, the "**Pre-Petition Credit Agreement**");[1] (b) Guaranty and Security Agreement, dated as of March 13, 2014, by and among Debtor, C&G, Parent, and Pre-Petition Agent (the "**Pre-Petition Guaranty and Security Agreement**"); (c) Promissory Note, dated as of March 13, 2014, in the original principal amount of $20,000,000 payable to Regions Bank, (d) First Preferred Fleet Mortgage, dated March 13, 2014, executed by C&G in favor Pre-Petition Agent, (e) First Preferred Fleet Mortgage, dated March 13, 2014, executed by Debtor in favor Pre-Petition Agent, (f) Assignment of Freight/Hire, dated as of March 13, 2014, executed by C&G in favor Pre-Petition Agent, (g) Assignment of Freight/Hire, dated as of March 13, 2014, executed by Debtor in favor Pre-Petition Agent, (h) Assignment of Insurances, dated March 13, 2014, executed by C&G in favor of Pre-Petition Agent , (i) Assignment of Insurances, dated March 13, 2014, executed by Debtor in favor of Pre-Petition Agent, and (j) all other agreements, documents, and instruments executed and/or delivered with, to, or in favor of Pre-Petition Agent, including, without limitation, the security agreements, notes, guarantees, and Uniform Commercial Code ("**UCC**") financing statements and all other related agreements, documents, and instruments executed and/or delivered in connection therewith or related thereto (collectively, the "**Pre-Petition Loan Documents**");

       (ii)    <u>Pre-Petition Secured Obligations Amount</u>. As of the Petition Date, the amount outstanding on the loans was $21,691,252.80 in principal, <u>plus</u> all accrued and accruing default interest, costs, appraisal fees, expenses, professional fees and expenses, and other fees and charges (collectively, together with all other

---

[1]   For purposes of this paragraph D only, all capitalized terms used but not defined herein shall be defined in the Pre-Petition Credit Agreement.

obligations arising under the Pre-Petition Loan Documents, the **"Pre-Petition Secured Obligations"**).

(iii)   Pre-Petition Collateral. The Pre-Petition Secured Obligations and any and all post-petition obligations, accrued and/or owing, to Wells Fargo and the Pre-Petition Lenders (collectively, together with the Pre-Petition Secured Obligations, the "**Wells Fargo Obligations**") are secured pursuant to the Pre-Petition Loan Documents by security interests and liens (the "**Pre-Petition Liens**") granted by the Debtor, C&G, and Parent to Pre-Petition Agent upon all of the Debtor's, C&G's, and Parent's assets, including, without limitation, all Accounts, chattel paper and electronic chattel paper, deposit accounts, documents, Equipment, general intangibles, Vessels, goods, instruments, Inventory, investment property, letter-of-credit rights, letters of credit, all sums on deposit in any deposit account or any Securities Account; together with (a) all substitutions and replacements for and products of such property; (b) in the case of all goods, all accessions; (c) all accessories, attachments, parts, Equipment and repairs now or subsequently attached or affixed to or used in connection with any goods; (d) all warehouse receipts, bills of lading and other documents of title that cover such goods now or in the future; (e) all collateral subject to any Lien of the Pre-Petition Agent; (f) any money or other assets of the Debtor, C&G, or Parent that come into the possession, custody, or control of Pre-Petition Agent now or in the future; (g) proceeds of any of the foregoing; (h) books and records of each of the Debtor, C&G, and Parent, including all mail or e-mail addressed to the Debtor, C&G, or Parent; and (i) all of the above collateral, whether now owned or existing or acquired now or in the future or in which the Debtor, C&G, or Parent has rights now or in the future; and (j) all of the foregoing, whether now owned or existing or hereafter acquired or arising or in which any of the Debtor, C&G, or Parent now has or hereafter acquires any rights (collectively, the "**Pre-Petition Collateral**"),[2] with priority over all other liens except for any liens otherwise permitted by the Pre-Petition Credit Agreement.

(iv)   Debtor's Default.   As of the Petition Date the Debtor and the other Borrowers were in default under the Pre-Petition Loan Documents and remain in default under the Pre-Petition Loan Documents.  As of the Petition Date, the credit facility evidenced by the Pre-Petition Loan Documents was terminated.  Wells Fargo is not obligated to make any advances or allow the Debtor to use Wells Fargo's cash collateral under the Pre-Petition Loan Documents.

(v)   Waiver of Claims.   Subject to challenges or claims brought during the Challenge Period (defined below), the Debtor waives and will not assert any claim, counterclaim, setoff or defense of any kind, nature or description which would in any way affect the validity, enforceability and non-avoidability of any of Wells Fargo's liens, claims and/or security interests in the Pre-Petition Collateral.

---

[2]   The acknowledgment and agreement by the Debtor as to the Pre-Petition Secured Obligations and the liens, rights priorities and protections granted to or in favor of Wells Fargo, as set forth herein and in the Pre-Petition Credit Agreement, shall constitute a proof of claim on behalf of Wells Fargo and the Pre-Petition Lenders in the Debtor's bankruptcy case.

(vi) <u>Validity of Pre-Petition Loan Documents and Pre-Petition Liens</u>. Subject to challenges or claims brought during the Challenge Period (defined below), (a) as of the Petition Date, (1) the Pre-Petition Liens are valid, binding, enforceable, and perfected first-priority liens and are not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, (2) the Pre-Petition Secured Obligations constitute legal, valid and binding obligations of the Debtor and the other Borrowers, enforceable in accordance with the terms thereof (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code), no offsets, defenses or counterclaims to any of the Pre-Petition Debt exists, and no portion of the Pre-Petition Secured Obligations is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (3) the Pre-Petition Secured Obligations constitute an allowed secured claim, and (b) on the date that this Interim Order is entered, the Debtor has waived, discharged and released Wells Fargo, together with its affiliates, agents, attorneys, officers, directors and employees, any right the Debtor may have (1) to challenge or object to any of the Pre-Petition Secured Obligations, (2) to challenge or object to the security for the Pre-Petition Secured Obligations, and (3) to bring or pursue any and all claims, objections, challenges, causes of action and/or chooses in action arising out of, based upon or related to the Pre-Petition Credit Agreement or otherwise.

(vii) <u>Pre-Petition Secured Obligations Are Oversecured</u>. Wells Fargo is oversecured as of the Petition Date in that the value of the Pre-Petition Collateral exceeds the amount of the Pre-Petition Secured Obligations.

E. <u>Cash Collateral</u>. "**Cash Collateral**" is defined by Section 363(a) of the Bankruptcy Code, and includes post-petition proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in Section 522(b) and as the term "proceeds" is described in UCC Section 9-102.

F. <u>Necessity and Best Interests Concerning Use of Cash Collateral</u>. The Debtor does not have sufficient unencumbered cash or other assets with which to continue to operate its business. The Debtor requires immediate authority to use Cash Collateral as defined herein in order to continue its business operations without interruption. The Debtor's use of Cash Collateral, to the extent and on the terms and conditions set forth herein and the Pre-Petition Credit Agreement, is necessary to avoid immediate and irreparable harm to its estate pending a final hearing.

G. <u>Insider Unsecured Loan</u>. In addition to the use of Cash Collateral, the Debtor requires additional post-petition funding in order avoid interruption of its business operations and avoid irreparable harm to its bankruptcy estate. The Debtor's president and ultimate beneficial owner of all equity interests in the Debtor, Janson Graham ("**Graham**") has agreed to fund one million dollars ($1,000,000) on an unsecured, subordinated basis (as detailed below) in accordance with the Budget (defined below) and the terms of this Interim Order (the "**Insider Unsecured Loan**"). Pursuant to agreement of Graham, the Insider Unsecured Loan shall be: (1) without interest, (2) unsecured, (3) of no greater priority than pre-petition general unsecured claims against the Debtor, and (4) subordinate to the claims of Wells Fargo and the Pre-Petition Lenders, such that no repayment of any portion of the Insider Unsecured Loan shall occur unless and until the Wells Fargo Obligations are satisfied in full.

H. <u>Necessity and Best Interest Concerning Insider Unsecured Loan.</u> The interim relief set forth herein authorizing the Insider Unsecured Loan is: (1) necessary to avoid immediate and irreparable harm to the Debtor's estate pending a Final Hearing, (2) fair and reasonable and in the best interests of the Debtor, its creditors, estate and equity holders, and (3) essential for the continued operation of the Debtor's business.

I. <u>Budget</u>. The Debtor has prepared a budget, a copy of which was annexed to DIP Motion and which is also annexed hereto as **"Exhibit A"** (such budget, as amended by the Interim Order, shall be referred to as the "**Budget**"). The Budget has been thoroughly reviewed by the Debtor and its management and sets forth, among other things, the projected cash receipts and disbursements for the periods covered thereby. The budget is amended as follows: (1) the Debtor shall to pay Wells Fargo advances for reimbursement of Wells Fargo's professional fees incurred

in connection with the Bankruptcy Case as follows: (a) $50,000[3] on or before October 7, 2015, and (b) an additional $13,500[4] each week commencing the week of September 19, 2015 (collectively, (a) and (b) shall be referred to as the "**Wells Fargo Professional Fee Advances**"), and (2) any disbursements relating to the insider funding under the "Interest – DIP" line item in the Budget are eliminated. The Wells Fargo Professional Fee Advances are not expected to cover all professional fees for which Wells Fargo will be entitled to reimbursement. The Wells Fargo Professional Fee Advances do not constitute a cap on professional fees reimbursable to Wells Fargo and shall be paid without prejudice to any right of Wells Fargo to reimbursement of the actual professional fees which have been or may be incurred in connection with the Bankruptcy Case and the Wells Fargo Obligations; provided, however, that the foregoing shall not prejudice any right of the Debtor to object to Wells Fargo's professional fees. The Debtor believed in good faith that the Budget was achievable and would allow the Debtor to operate in Chapter 11 without accrual of unpaid administrative expenses during the term of the Budget; however, following the Interim Hearing the Debtor identified deficiencies in the Budget which will require substantial revision prior to the entry of any Final Order governing the use of Cash Collateral. Wells Fargo has expressed great concern over the Debtor's ability to comply with the Budget. In exchange for Wells Fargo's consent to the interim use of Cash Collateral, through October 20, 2015, the Debtor has agreed to cooperate with Wells Fargo in an effort to provide further information and prepare a revised budget governing the use of Cash Collateral.

---

[3] $25,000 of the $50,000 October 7, 2015 advance constitutes reimbursement for a portion of the legal fees incurred by Wells Fargo prior to the Interim Hearing, and the remaining $25,000 is for financial advisory fees.

[4] $7,000 of the weekly $13,500 advances constitutes reimbursement for a portion of the legal fees which will be incurred by Wells Fargo during the Bankruptcy Case, and the remaining $6,500 is for financial advisory fees.

J.    Purposes.  The Debtor seeks authority to use Cash Collateral, subject to the Budget, to meet the ordinary cash needs of the Debtor and for such other purposes necessary to (a) maintain and preserve its assets, and (b) pay items in accordance with the Budget.

**WHEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that:**

1.    Use of Cash Collateral.  The Debtor is authorized subject to and in accordance with the Budget and the representations, stipulations, and terms set forth in this Interim Order and the Pre-Petition Credit Agreement, to use Cash Collateral for the following purposes:

a)    maintenance and preservation of its assets;

b)    collection of its accounts receivable; and

c)    payment of items pursuant to the Budget and this Interim Order.

No proceeds of the Pre-Petition Collateral or any asset which the Debtor obtains after the Petition Date in which Wells Fargo has a lien may be utilized by the Debtor to finance, in any way, any professional fees, disbursements, costs or expenses incurred in connection with asserting, or preparing, any claims or causes of action against Wells Fargo, or its counsel or advisors (including advisors to their counsel), arising from or relating to the Pre-Petition Loan Documents or this Interim Order and/or investigating, challenging or raising any defenses to the Wells Fargo Obligations, the Pre-Petition Liens, this Interim Order, or the liens granted pursuant to this Interim Order.  The Debtor is specifically allowed a budget of $20,000 to investigate the Pre-Petition Liens, provided that any funding for the same from Cash Collateral is governed by the professional fees authorization in the Budget.

2.    Debtor in Possession Bank Accounts.  As part of the adequate protection provided to Wells Fargo and the Pre-Petition Lenders, and as a condition of Wells Fargo's consent to the use of its Cash Collateral, the Debtor shall maintain all debtor-in-possession bank accounts at

Regions Bank, N.A. ("**Regions**").  In order to facilitate the Debtor's use of Cash Collateral and further implement the provisions of this Order, certain modifications will be made to the Debtor's existing bank accounts and cash management procedures at Regions.  The Debtor maintains three accounts at Regions:  (1) the Graham Gulf, Inc. operating account (account number ending in -753; the "**Operating Account**"), (2) the Graham Gulf payroll account (account number ending in -085; the "**Payroll Account**"), and (3) the Graham Gulf collection account (account number ending in -4031; the "**Collection Account**").  Each of the three accounts will be immediately re-designated as Debtor-in-Possession accounts and identified as such in the records of Regions and on all checks written on the Payroll or Operating Accounts.  The Collection Account served, before the Petition Date, as the account into which customers or other payors would make payments owed to the Debtor, which payments were then swept to Wells Fargo pursuant to the terms of [the financing documents] and the deposit account control agreement between Regions and Wells Fargo (the "**DACA**").  Wells Fargo would then fund into a master account in the name of co-borrower Graham Holding Co. Inc., from which funds were drawn automatically by the Operating Account and Payroll Account as needed.  Pursuant to this Order, the Debtor's funds shall be deposited into or held in the Debtor's Collection, Payroll or Operating Accounts only.  The treasury management agreement between the Debtor and Regions and the DACA are hereby deemed amended as needed to allow the Debtor access to funds in the Collection Account and an ability to transfer funds from the Collection Account to the Operating Account or Payroll Account as needed for so long as the Debtor is authorized to use Cash Collateral under this Order; provided, that Regions shall have no obligation to reinstate any pre-Petition Date controls on the Accounts modified by this Order absent specific further order of this Court.  The Debtor shall ensure that funds are transferred into the Operating Account or Payroll Account before it issues any checks or

authorizes any draws against such account. It shall be the Debtor's obligation to ensure that sufficient funds are moved into and held in the Operating Account or the Payroll Account, as appropriate, at all times to cover all checks issued or to-be-issued from, but not yet presented for payment against, the account, as well as all electronic draws from or debits to either account authorized by the Debtor; provided, however, that nothing herein shall expand in any way the Debtor's ability to use Cash Collateral as otherwise set forth herein. Regions shall have no duty to manage or move the Debtor's funds between or among the three accounts, whether to facilitate payment of items presented or otherwise. The Debtor shall bear sole responsibility for ensuring that no check is written or transfer authorized unless sufficient funds are in the account to be debited to cover that, and all other, pending transactions, and Regions shall bear no liability for returning any item presented against insufficient funds. Regions is authorized to charge and collect its customary fees or charges associated with the Debtor's accounts in accordance with its typical practices. Regions is expressly authorized to share with Wells Fargo any and all customer information relating to the Debtor, Parent, and C&G, including, without limitation, account balances and other account data.

3.      Reporting.   On October 6, 2015, and on Tuesday of each subsequent week, the Debtor shall provide Wells Fargo with: (i) a variance report, in form and substance acceptable to Wells Fargo substantially consistent with the Debtor's form of the Budget annexed hereto as "**Exhibit A**", showing the actual cash receipts and disbursements of the Debtor for the preceding week and reconciling the same to the budgeted line item amounts set forth in the Budget for such week; (ii) detailed weekly cash and accounts receivable and accounts payable reports and (iii) weekly check and wire registers evidencing all payments made during the previous week. Within five (5) business days after the end of each calendar month, the Debtor shall provide Wells Fargo

Case 15-03065    Doc 34    Filed 10/01/15    Entered 10/01/15 10:04:49    Desc Main
                  Document      Page 10 of 24

with a written vessel utilization report. In addition the Debtor shall also continue to comply with the following reporting requirements in Schedule 5.2 of the Loan Document as amended below:

    a) Notice of all claims, offsets, or disputes asserted by Account Debtors with respect to Debtor's Accounts.

    b) An aging by vendor, of any held checks.

    c) A detailed report listing any written notices regarding any material defaults or claim violations or termination in connection with any Customer Contract, and copies of such notices.

    d) A detailed list of Debtor's customers, with address and contact information.

    e) Notice of any labor strikes, labor disputes, or similar actions.

    f) Notice of any insurance policy for any of Debtor's assets ceasing to be in force and effect.

    4.   <u>Weekly Update Calls</u>. The Debtor's Chief Financial Officer and other members of management shall hold weekly update calls with Wells Fargo and its professionals during which the Debtor shall provide detailed updates concerning: (a) vessel utilization during the preceding week; (b) customer contracts; and (c) any progress concerning efforts to sell any or all assets of the Debtor, to reorganize the Debtor, or to refinance the Debtor, (d) the Debtor's operational status, and (e) any matter affecting Wells Fargo's collateral. The first such call shall occur on Wednesday, October 7, 2015 at 3 p.m. prevailing central time.

    5.   <u>Creditor's Rights of Inspection and Audit</u>. Upon reasonable notice by Wells Fargo, the Debtor shall permit Wells Fargo and any of its respective agents reasonable and free access to the Debtor's records, vessels, and place of business during normal business hours to verify the existence, condition and location of the Debtor's assets and to audit Debtor's cash receipts and

disbursements and other matters relating to the financial affairs of the Debtor.  Regions is authorized to share all information concerning Debtor's accounts with Wells Fargo.

6. <u>Termination of Right to Use Cash Collateral</u>.  The "**Cash Collateral Termination Date**" shall mean the earliest to occur of: (i) the date on which Wells Fargo provides, via electronic mail or overnight mail, written notice to counsel for the Debtor and counsel for any Committee (to the extent one has been formed and approved by the Court) of the occurrence of an Event of Default (as defined below); (ii) **October 20, 2015**, unless a Final Order and budget acceptable to Wells Fargo governing the use of Cash Collateral has been entered; (iii) the expiration of the Budget on **December 11, 2015**; or (iv) the entry of an order by the Court terminating the authorization to use Cash Collateral.  Nothing in this section shall prohibit the Debtor from seeking authority to continue to use cash-collateral after the Cash Collateral Termination Date, either by consent of Wells Fargo or on a non-consensual basis by Court order, after notice and a hearing.

7. <u>Adequate Protection</u>.  As adequate protection for the use of Cash Collateral, Wells Fargo is GRANTED, without limitation, the following:

a) <u>Replacement Lien</u>.  Wells Fargo is hereby granted a replacement lien under Sections 361(1) and 361(2) of the Bankruptcy Code (the "**Replacement Lien**") to the extent Wells Fargo's Cash Collateral is used by the Debtor in all post-petition assets of the Debtor, including, without limitation, all accounts, accounts receivable, chattel paper and electronic chattel paper, deposit accounts, documents, equipment, vessels, contracts, general intangibles, goods, instruments, inventory, investment property, letter-of-credit rights, letters of credit, all sums on deposit in any account, and any items in any lockbox; together with (a) all substitutions and replacements for and products of such property; (b) in the case of all goods, all accessions; (c) all accessories, attachments, parts, equipment and repairs now or subsequently attached or affixed to

or used in connection with any goods; (d) all warehouse receipts, bills of lading and other documents of title that cover such goods now or in the future; (e) all collateral subject to liens granted in any of the Pre-Petition Loan Documents; (f) any money or other assets of the Debtor now or in the future; (g) proceeds of any of the foregoing; (h) books and records of the Debtor, including all mail or e-mail addressed to the Debtor (collectively, the "**Post-Petition Collateral**"). The Replacement Liens: (i) are and shall be in addition to the Pre-Petition Liens; (ii) shall have the same priority in the Debtor's post-petition assets (the "**Post-Petition Collateral**"), and proceeds thereof, that Wells Fargo held in the Pre-Petition Collateral; (iii) are and shall be first priority liens, subject only to liens permitted under the Pre-Petition Credit Agreement that are properly perfected, valid, and enforceable without any further action as of the Petition Date; and (iv) shall remain in full force and effect notwithstanding any conversion or dismissal of the Bankruptcy Case.

b) <u>Allowed Claim under Section 507(b) of the Bankruptcy Code</u>. To the extent the adequate protection provided for hereby proves insufficient to protect Wells Fargo from diminution in the value of its collateral, Wells Fargo shall have a superpriority administrative expense claim, pursuant to Section 507(b) of the Bankruptcy Code, senior to and with priority over: (i) all costs and expenses of administration of the Debtor's Bankruptcy Case that are incurred under any provision of the Bankruptcy Code, including, without limitation, Sections 503; 506(c); 507(a); or 552(b) of the Bankruptcy Code; and (ii) the claims of any other party under Section 507(b) of the Bankruptcy Code.

c) <u>Adequate Protection Payments</u>. As further adequate protection for the Debtor's use of Cash Collateral, Wells Fargo shall be entitled to receive, without limitation, the following

adequate protection payments from the Debtor (collectively, the "**Adequate Protection Payments**"):

   i) <u>Accrual and Payment of Interest</u>.  The Pre-Petition Secured Obligations shall bear interest at the default interest rate, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of this Interim Order, the Budget, and the Pre-Petition Loan Documents, in each case without further notice, motion or application to, order of, or hearing before, this Court.

   ii) <u>Wells Fargo Professional Fee Advances</u>.  As further adequate protection, the Debtor shall timely pay the Wells Fargo Professional Fee Advances.  The Wells Fargo Professional Fee Advances do not constitute a cap on professional fees reimbursable to Wells Fargo and shall be paid without prejudice to any right of Wells Fargo to reimbursement of actual professional fees and other expenses which have been or may be incurred in connection with the Bankruptcy Case and the Wells Fargo Obligations; provided, however, that the foregoing shall not prejudice any right of the Debtor to object to Wells Fargo's professional fees.

  d) <u>Deemed Perfected</u>.  The Replacement Liens granted herein are automatically deemed perfected upon entry of this Interim Order without the necessity of Wells Fargo taking possession, filing financing statements, mortgages or other documents.  Although not required, upon request by Wells Fargo, the Debtor shall execute and deliver to Wells Fargo and any and all UCC Financing Statements, UCC Continuation Statements, Certificates of Title or other instruments or documents considered by Wells Fargo to be necessary in order to perfect the security interests and liens in the Post-Petition Collateral and proceeds granted by this Interim

Order, and Wells Fargo is authorized to receive, file and record the foregoing at Wells Fargo's own expense, which actions shall not be deemed a violation of the automatic stay.

8.      No Surcharge.  No costs or expenses of any kind incurred in connection with the Debtor's Bankruptcy Case by any party may be imposed upon Wells Fargo, the Pre-Petition Lenders, or any of their collateral pursuant to Section 506(c) of the Bankruptcy Code or otherwise without Wells Fargo's prior written consent, which Wells Fargo may grant or deny in its sole and absolute discretion, and no such consent shall be implied or imposed based on any action or inaction of Wells Fargo or any other party.

9.      No Marshalling.  In no event shall Wells Fargo be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Pre-Petition Collateral, the Post-Petition Collateral or any other asset subject to any Pre-Petition Lien or the Replacement Liens.

10.      Events of Default.  The occurrence of the following events shall constitute events of default under this Interim Order (each an "**Event of Default**"): (i) the Debtor's failure to duly and punctually observe, perform or discharge any obligation or duty imposed upon it by this Interim Order or any final order approving the use of Cash Collateral, including without limitation, the making of any of the Adequate Protection Payments; (ii) the Debtor's failure to comply with the Budget, allowing for the variances addressed herein; (iii) the Debtor's failure to collect revenues or receive funding on a four week rolling basis of less than ninety five percent (95%) of the amounts provided in the Budget, except that for the period beginning on the Petition Date and ending on October 19, 2015 (the "**Pre-Final Hearing Period**") the Debtor's revenue must be at least ninety five percent (95%) of the line item amount outlined in the Budget during the Pre-Final Hearing Period; (iv) the Debtor's disbursements by line item (with the exception of disbursements made to Wells Fargo) is more than one hundred five percent (105%) of the amounts provided in

Case 15-03065    Doc 34    Filed 10/01/15    Entered 10/01/15 10:04:49    Desc Main
                        Document        Page 15 of 24

the Budget on a four week rolling basis, except that for the Pre-Final Hearing Period the Debtor's cash disbursements for each line item shall not exceed one hundred five percent (105%) of the line item amounts outlined in the Budget during the Pre-Final Hearing Period; (v) the Debtor's overall net cash flow is less than ninety five percent (95%) of the amounts provided in the Budget on a four week averaged rolling basis or cumulative basis; (vi) Conversion of the case to Chapter 7 (vii) appointment of a Chapter 11 Trustee; (viii) Appointment of an Examiner with expanded powers. Upon the occurrence of an Event of Default, the Debtor's use of Cash Collateral shall automatically terminate. In no event shall the Debtor or any other party be authorized, without prior written consent from Wells Fargo, to use any proceeds of the Pre-Petition Collateral or any proceeds of the Post-Petition Collateral to pay any cost or expenses of administration in this Bankruptcy Case or in any subsequent or superseding Chapter 7 case after the occurrence of an Event of Default, until such time as all of the obligations under the Pre-Petition Loan Agreements and the Wells Fargo Obligations are paid, performed and satisfied in full.

11.    <u>Interlocutory Order</u>. This is an interlocutory order. Nothing contained herein shall be deemed or construed to: (a) limit Wells Fargo to the relief granted herein; (b) bar Wells Fargo from seeking other and further relief (including without limitation relief from the terms of this Interim Order) for cause shown on appropriate notice to the Debtor and other parties-in-interest entitled to notice of same; or (c) require Wells Fargo or the Pre-Petition Lenders to make any further loans or advances to the Debtor. All rights of Wells Fargo, the Pre-Petition Lenders, and the Debtor are hereby expressly reserved and preserved, except as specifically set forth in this Interim Order.

12.    <u>Bar of Challenges to the Wells Fargo Obligations</u>. Nothing in this Interim Order shall prejudice the rights of the Debtor, or the Committee, if one is appointed, or any other party

in interest with requisite standing, to (a) to object to or challenge (i) the validity, extent, perfection or priority of the security interests and liens of Wells Fargo, including, without limitation the Pre-Petition Liens, in and to the Pre-Petition Collateral, or (ii) the validity, allowability, priority, status or size of the Pre-Petition Secured Obligations, or (b) to bring suit against Wells Fargo in connection with or related to the Pre-Petition Credit Agreement, or the actions or inactions of Wells Fargo arising out of or related to the Pre-Petition Credit Agreement; provided, however, that, unless the Debtor, the Committee, or another party in interest with requisite standing commences a contested matter or adversary proceeding raising such objection or challenge, including without limitation any claim against Wells Fargo in the nature of a setoff, counterclaim or defense to the Pre-Petition Secured Obligations (including but not limited to, those under Sections 506, 544, 547, 548, 550 and/or 552 of the Bankruptcy Code or by way of suit against Wells Fargo), on or before the earlier of **December 30, 2015** or any date on which the Debtor files a pleading with the Court seeking to (i) sell assets or (ii) obtain alternative financing, in either case, in order to pay the Wells Fargo Obligations in full (the Petition Date through such date shall be referred to as the "**Challenge Period**"; and the date that is the next calendar day after the termination of the Challenge Period shall be referred to as the "**Challenge Period Termination Date**"), upon the Challenge Period Termination Date any and all such challenges and objections by any party (including, without limitation, any Committee and any Chapter 11 or Chapter 7 trustee appointed herein or in any successor case) not asserted by the Challenge Period Termination Date shall be deemed to be forever waived and barred, and the Wells Fargo Obligations and associated liens shall be deemed to be allowed in full and, to the extent of the value of the Pre-Petition Collateral on the Petition Date, shall be deemed to be allowed for all purposes in connection with the Debtor's Bankruptcy Case and the Debtor's Stipulations shall be binding on all creditors,

Case 15-03065    Doc 34    Filed 10/01/15    Entered 10/01/15 10:04:49    Desc Main
Document      Page 17 of 24

interest holders, parties in interest trustees, successors and assigns. During the Challenge Period, the Challenge Period and the Challenge Period Termination Date may be extended by the Court, for cause, after notice and hearing, or by written consent of Wells Fargo.

13. <u>Indemnification and Payment of Fees, Costs and Expenses</u>. Wells Fargo shall be entitled to payment of all fees, costs, expenses and other charges payable under the terms of the Pre-Petition Loan Agreements; provided that Wells Fargo shall submit copies of its professional fee invoices to the Debtor, the Bankruptcy Administrator, and counsel for any Committee, if any (and any subsequent trustee of the Debtor's estate). Such invoices may be redacted to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine. The Debtor, Bankruptcy Administrator, and any Committee (and any subsequent trustee of the Debtor's estates) may object to the reasonableness of the fees, costs and expenses included in any professional fee invoice submitted by Wells Fargo; provided that, any such objection shall be forever waived and barred unless (i) it is filed with this Court and served on counsel to Wells Fargo no later than fourteen (14) days after the objecting party's receipt of the applicable professional fee invoice and (ii) it describes with particularity the individual entries and/or items of fees, costs, and expenses that are the subject of the objection and provides the specific basis for the objection to each such entry or item of fees, costs, and expenses; provided, further, that the Debtor shall immediately pay any portion of the fees, costs and expenses included in any professional fee invoice submitted by Wells Fargo that is not subject of any objection filed by the Bankruptcy Administrator or the Committee upon the expiration of the fourteen (14) day objection period provided in this paragraph. Any hearing on an objection to payment of any fees,

Case 15-03065   Doc 34   Filed 10/01/15   Entered 10/01/15 10:04:49   Desc Main
                  Document      Page 18 of 24

costs and expenses of Wells Fargo set forth in a professional fee invoice shall be limited to the reasonableness or necessity of the particular items of categories of the fees, costs, and expenses which are the subject of such objection. The Debtor shall indemnify Wells Fargo to the extent set forth in the Pre-Petition Credit Agreement. All unpaid fees, costs, expenses, charges and indemnities that have not been disallowed by this Court on the basis of an objection filed by the Debtor, Bankruptcy Administrator, or Committee (or any subsequent trustee of the Debtor's estates) in accordance with the terms hereof shall be secured by the Pre-Petition Collateral and the Post-Petition Collateral as specified in this Interim Order. Any and all fees, commissions, costs and expenses paid prior to the Petition Date by the Debtor to Wells Fargo in connection with or with respect to the Pre-Petition Loan Documents are hereby approved in full.

14. <u>Release of Claims</u>. Subject to challenges or claims brought during the Challenge Period, the Debtor hereby (i) releases and discharges Wells Fargo and the Pre-Petition Lenders, together with their respective affiliates, agents, attorneys, members, officers, directors and employees (collectively, the "**<u>Protected Parties</u>**") from any and all claims and causes of action arising out, based upon or related to, in whole or in part, Pre-Petition Credit Agreement, any aspect of the pre-petition relationship between, or among, the Protected Parties and the Debtor or any other acts or omissions of the Protected Parties in connection with any of the Pre-Petition Credit Agreement or their pre-petition relationships with the Debtor, including, without limitation, any avoidance action available under Chapter 5 of the Bankruptcy Code (or under Section 502(d) of the Bankruptcy Code); (ii) waives any and all claims and/or defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, first priority, enforceability and avoidability (under the Bankruptcy Code or otherwise) of the Pre-Petition Secured Obligations and the Pre-Petition Liens; and (iii) agrees, without further Court

order and without the need for filing of any proof of claim, to the allowance of the pre-petition claims of Wells Fargo pursuant to Sections 502 and 506 of the Bankruptcy Code on account of such indebtedness as fully secured claims for principal, plus accrued pre-petition and post-petition interest, fees, expenses and other amounts chargeable under the Pre-Petition Loan Documents.

15.     <u>No Release of Liens</u>.  Under no circumstances shall any of Wells Fargo's liens, whether arising pre-petition or post-petition, be required to be released unless and until all the Wells Fargo Obligations have been satisfied in full and are no longer subject to challenge and any claims or causes of action against Wells Fargo and/or the Pre-Petition Lenders relating to the Debtor have been fully and finally resolved by final court order with any appeal period having expired.

16.     <u>Survivability; Binding Effect</u>.  No reorganization plan or other disposition of the property of the estate proposed by the Debtor, any insider of the Debtor, or any third party shall modify or abrogate any of the rights and benefits afforded to Wells Fargo by this Interim Order, any final order authorizing the Debtor's use of Cash Collateral, or the Pre-Petition Credit Agreement without the prior written consent of Wells Fargo, which may grant or deny such consent in its sole and absolute discretion.  The provisions of this Interim Order shall be binding upon the Debtor and its buyers, successors and assigns.  In the event that this Bankruptcy Case is dismissed, superseded, substantively consolidated with another Chapter 11 case or entity, or the Debtor merges into any other entity under any plan of reorganization, neither the dismissal of this Case, nor such consolidation or merger shall affect the rights of Wells Fargo under this Interim Order or the Pre-Petition Credit Agreement, and all of Wells Fargo's rights and remedies thereunder and hereunder shall remain in full force and effect.  As a condition to Wells Fargo's consent to the Debtor's use of Cash Collateral, the provisions of this Interim Order shall survive and be binding

upon any successor trustee appointed in the Case or any Chapter 7 case to which the Debtor's bankruptcy cases may subsequently be converted. The Debtor retains the right to seek authorization for non-consensual use of Cash Collateral upon a default under this Interim Order.

17. <u>Insider Unsecured Loan.</u> In addition to the use of Cash Collateral, the Debtor is authorized to enter into the Insider Unsecured Loan in an amount up to one million dollars ($1,000,000) in accordance with the Budget. The Insider Unsecured Loan shall be: (1) without interest, (2) unsecured, (3) of no greater priority than pre-petition general unsecured claims against the Debtor, and (4) subordinate to the Wells Fargo Obligations and any other claims of Wells Fargo, such that no repayment of any portion of the Insider Unsecured Loan shall occur unless and until the Wells Fargo Obligations and any other claims of Wells Fargo are satisfied in full. Moreover, prior to payment in full of the Wells Fargo Obligations, Graham shall receive no compensation, distributions, or payments from the Debtor or its estate, except for regular payments of his post-petition salary as president of the Debtor. Such salary is currently in the amount of, and shall not exceed, $300,000 on an annual basis.

18. <u>Discovery and Debtor Cooperation</u>. As a condition to the consensual use of Cash Collateral set forth in this Interim Order, the Debtor consents to Wells Fargo taking discovery on an expedited basis, which shall include, but not be limited to:

a) Production of documents concerning (i) any valuation of the Debtor's assets; (ii) any efforts of the Debtor to obtain refinancing; (iii) any efforts of the Debtor to market or sell any of its assets; and (iv) any other matters related to the Debtor's financial affairs, operations (including, without limitation, revenues and expenses), or affecting the administration of the Debtor's estate. Such documents shall be produced to Wells Fargo no later than October 8, 2015.

Case 15-03065   Doc 34   Filed 10/01/15   Entered 10/01/15 10:04:49   Desc Main
Document   Page 21 of 24

b) Depositions of (i) Chris Collier and/or any other appraiser or witness who may provide testimony as to the value of the Debtor's assets; (ii) the Debtor's financial advisor; (iii) Janson Graham; (iv) the Debtor's Chief Financial Officer; and (v) any other person reasonably requested by Wells Fargo. Such examinations shall take place the week of October 12, 2015 at a mutually agreed upon time and place.

As a further condition of the consensual use of Cash Collateral, the Debtor shall provide Wells Fargo's financial advisors, Carl Marks and Co., Inc., immediate on-site access to the Debtor's financial records, Chief Financial Officer, and other Debtor's personnel as needed, and cooperate with Wells Fargo in efforts to arrive at a revised budget governing the use of Cash Collateral in connection with any Final Order.

19. <u>Final Hearing</u>. The Final Hearing before this Court to consider entry of an order approving the relief set forth in this Interim Order on a final basis is set for **October 20, 2015** at 1:30 p.m. The Debtor shall promptly serve copies of this Interim Order, by United States mail, first-class postage prepaid to (a) all parties given notice of the Interim Hearing; (b) any party which has filed prior to such date a request for notices with this Court; (c) the (20) largest unsecured creditors or counsel for the Committee, if any; (d) counsel for Wells Fargo; (g) the Internal Revenue Service; and (i) all parties who have filed UCC-1 financing statements against the Debtor, or who, to the Debtor's knowledge, have asserted any liens on any of the Debtor's assets. The Debtor shall immediately file with the Clerk a certificate of service of said mailing. Any party in interest objecting to the relief sought at the Final Hearing shall serve and file written objections, which objections shall be served upon: (i) counsel for the Debtor, Helmsing, Leach, Herlong, Newman & Rouse, 150 Government Street, Suite 2000, Mobile, AL 36602, Attention: Jeffrey J. Hartley, Esq. jjh@helmsinglaw.com; (ii) counsel for Wells Fargo, Greenberg Traurig, LLP,

Terminus 200, 3333 Piedmont Road, NE, Suite 2500, Atlanta, GA 30305, Attention: David B. Kurzweil, Esq., kurzweild@gtlaw.com; (v) the Bankruptcy Administrator, and (iv) counsel for the Committee, if any, and shall file with the Clerk of the United States Bankruptcy Court for the Southern District of Alabama, in each case, to allow actual receipt of the foregoing no later than October 16, 2015.

Dated:  October 1, 2015

HENRY A. CALLAWAY
CHIEF U.S. BANKRUPTCY JUDGE

Doc.#450493

# EXHIBIT A

ATL 20871642v5